IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| GLORIA JEAN ARNOLD | ) | |
| | ) | |
| | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:13-CV-850-KOB |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

The claimant, Gloria Arnold, protectively filed for disability insurance benefits on March 6, 2012, alleging disability beginning December 31, 2011. (R. 15). The claimant alleges disabilities resulting from severe back and leg pain, migraines, seizures, and severe, recurrent Major Depressive Disorder. (R. 18). The Commissioner denied the claim initially on June 15, 2012. The claimant requested a hearing on August 1, 2012, and the Administrative Law Judge conducted a video hearing on November 21, 2012. (R. 15).

On February 15, 2013, the ALJ determined that the claimant was not disabled as defined by the Social Security Act and, thus, not eligible for supplemental security income. (R. 15). On April 5,

1

2013, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. § § 405 (g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents two issues for review: 1) whether the ALJ properly articulated good cause for disregarding the opinion of Charles E. Hood, M.D., the treating physician; and 2) whether the ALJ properly applied the pain standard in evaluating the claimant's subjective testimony regarding her limitations.

## III. STANDARD OF REVIEW

The standard for reviewing the ALJ's decision is limited.  This court must affirm the ALJ's decision if the ALJ applied the correct legal standards and if the factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No...presumption of validity attaches to the [ALJ's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the ALJ's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence.  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 402 (1971).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature

2

and extent of a claimant's Residual Functional Capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the ALJ because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the Plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the ALJ." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as substantial evidence in the record supports it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [ALJ]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the ALJ employs a five-step, sequential evaluation process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?

3

(3) Does the person's impairment meet or equal one of the specific impairments set
    forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next
question, or, on steps three and five, to a finding of disability.  A negative answer to
any question, other than step three, leads to a determination of "not disabled.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

Absent a good showing of cause to the contrary, the ALJ must accord substantial or
considerable weight to the opinions of treating physicians. *Lamb v. Bowen*, 847 F.2d 698, 703
(11th Cir. 1988). The ALJ must credit the opinions of treating physicians over those of consulting
physicians unless good cause exists for treating the opinions differently. *Lewis v. Callahan*, 125
F.3d 1436, 1440-41 (11th Cir. 1997). The ALJ may discount a treating physician's report when it is
not accompanied by objective medical evidence or is wholly conclusory. *Crawford v.
Commissioner*, 363 F.3d at 1159. Where the ALJ articulated specific reasons for failing to give the
opinion of a treating physician controlling weight, and those reasons are supported by substantial
evidence, the ALJ commits no reversible error. *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir.
2005).

In evaluating pain and other subjective complaints, the ALJ must consider
whether the claimant demonstrated an underlying medical condition, and *either* (1) objective
medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2)
that the objectively determined medical condition is of such a severity that it can reasonably be
expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

4

The ALJ may consider the claimant's daily activities in evaluating and discrediting complaints of disabling pain. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). If the ALJ decides to discredit the claimant's testimony about her pain, she must articulate explicit and adequate reasons for that decision; failure to articulate reasons for discrediting the claimant's testimony requires that the court accept the testimony as true. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding supported by substantial evidence in the record. *Foote*, 67 F.3d at 1562.

## V. FACTS

The claimant has a tenth grade education and was fifty years old at the time of the administrative hearing. (R. 29). She alleges her disability started December 31, 2011. The claimant last worked as a janitor for Maple Industries, but Maple fired her on January 21, 2012, after determining that she could no longer perform the tasks required by her job. She filed for unemployment and received benefits for six months, but she had not found a new job at the time of the hearing, despite looking for one. (R. 71-72). The claimant previously worked as a janitor, cook, packer, and farm laborer. (R. 50-56).

### *Physical Limitations*

On August 28, 2009, in response to a diagnosis of lower back pain, John L. Reichie, M.D., of Open MRI of Scottsboro, conducted an MRI on the claimant. He found normal vertebral body, height, alignment, and nerve flow. He also found no evidence of focal disc protrusion or extrusion, and no narrowing of the spinal cord or cervical disc space. He concluded that the patient had minimal degenerative disc disease with a small right paracentral disc bulge at L5-S1. (R. 411).

In January of 2010, the claimant fell, hit the back of her head, and passed out for two to three seconds after the fall. (R. 410). On May 17, 2010, the claimant consulted the Huntsville Hospital Neurological Associates[1] about the side-effects of the fall that occurred five months earlier. She claimed to be having a "pins and needles" sensation in her neck; dizziness; and headaches in the back of her head. The MRI showed white matter lesions predominantly on the left side; a normal cervical spine; and rotator cuff tendinitis on the right shoulder. (R. 410).

On May 27, 2010, in response to a history of seizures, Anjaneyulu Alapati, M.D., of Huntsville Hospital, performed an EEG upon the claimant. He found that the claimant was properly relaxed and had sufficient inhibition control, and that she did not demonstrate signs consistent with those at risk for strokes or seizures. (R. 357). The same day, in response to the claimant's history of strokes, Dr. Alapati also ran a Carotid Doppler test that found some abnormal narrowing of the internal carotid artery, but no definite plaque build-up. He noted her MRI was abnormal and diagnosed the claimant with post-concussion syndrome. (R. 398). He recommended the patient take Flexeril, a muscle relaxer used to relieve skeletal muscle spasms, and arranged a follow-up appointment. (R. 399).

Medical records detailing the claimant's visits to Charles E. Hood, M.D., in Scottsboro, from August 2, 2010, through February 2, 2012, evidence that the claimant complained frequently about moderate to severe pain in her back and legs, hypertension, shortness of breath, and insomnia. In 2010, the claimant saw Dr. Hood on six occasions: August 2, August 13, August 26, September 24, October 22, and December 21. She complained of constant and severe leg and back pain, and constant and severe dizziness. When asked to rate her pain on a scale of one to ten, she

---

[1]The medical record fails to indicate which doctor conducted the examination.

6

consistently rated the pain between a seven and a nine. During this period of time, Dr. Hood diagnosed the claimant with hypertension, chronic pain, and anxiety, and he prescribed the claimant Lortab for pain and Adipex for her hypertension. He also consistently noted that the claimant's pain improved with medication. (R. 254-260).

In 2011, the claimant visited Dr. Hood's office on nine occasions.  On six of those occasions, January 20, February 22, March 22, October 6, October 14, and November 3, the claimant complained of chronic lower back pain and leg pain.  (R. 264-76). On multiple of those occasions, the claimant rated her pain a seven to eight on a scale of ten. (R. 262-66). Dr. Hood prescribed Lortab and Ativan during all six visits; however, on the March 22 visit, he also assessed the claimant with long term use of medication and ordered a drug screen. (R. 262-76).

On the other three occasions, the claimant visited for reasons unrelated to her back or leg pain. On May 13, the claimant complained of a burning sensation in her forehead, and Dr. Hood diagnosed her with a headache and type II diabetes. On May 19, the claimant complained of fatigue and insomnia, and Dr. Hood assessed her with insomnia, and malaise and fatigue. (R. 268-72). Finally, on December 23, the claimant complained of shortness of breath, indicated that she might have had an anxiety attack, and inquired if the office could provide her with more Lortab. The records do not clearly indicate if Dr. Hood complied with her request. (R. 280).

On May 17, 2011, the claimant underwent an MRI of her brain at Open MRI of Scottsboro.   John L. Reichie, M.D., conducted the test in response to her complaints of headaches. Dr. Reichie reported that the MRI indicated the claimant suffered from chronic ischemia, or a condition in which the coronary arteries become so narrow that they limit the flow of blood to the heart and, as a result, the brain. However, he could not exclude other causes for her headaches. (R. 401).

On October 15, 2011, the claimant returned to the Emergency Room at Huntsville Hospital for unrelated reasons. Rachel Gonee, N.P., conducted the initial examination and found the claimant to be oriented times three, and her extremities to be non-tender with a full range of motion. She also found no respiratory problems and no limitations on range of motion caused by pain. (R. 307).

On February 2, 2012, the claimant returned to Dr. Hood's office, complained of back pain, and again requested refills of her pain medication. The records are unclear as to whether he refilled her medications (R. 282).

In the claimant's Functional Capacity Report dated May 5, 2012, she asserted that she had trouble concentrating, hearing, balancing, speaking, sleeping, and walking longer than a block at a time. She also claimed that an injury to her hand prevented her from lifting objects heavier than five pounds and that her legs were prone to cramping. Additionally, she claimed to have trouble understanding and reading instructions as a result of her hearing loss. (R. 211). The claimant also claimed that she could go out alone, drive alone, and prepare meals for herself. (R. 209).

On August 20, 2012, Dr. Hood completed a Residual Functional Capacity Questionnaire in which he acknowledged the claimant's diagnosis of chronic back pain, leg pain, and seizures. (R. 360). He indicated that the claimant could sit for up to thirty minutes at a time, and stand or walk for up to thirty minutes at a time. He also found that the claimant could only sit for a total of two hours every day and stand or walk for an additional two hours everyday. Dr. Hood noted that the claimant would need to take unscheduled breaks lasting twenty to thirty minutes every hour of an eight-hour workday. Finally, he concluded that the claimant was not physically capable of working an eight-hour workday, five days a week on a sustained basis. (R. 360-61). In a follow-up Residual Functional Capacity Questionnaire completed on September 28, Dr. Hood's analysis

remained largely the same, except for an additional diagnosis of migraines, high blood pressure, and arthritis. He also added symptoms of speech deficits and hearing problems. (R. 403).

*Mental Limitations*

On September 24, 2011, the claimant took seventeen Trizapams (Halcion) in an attempted suicide. The police arrested the claimant for driving under the influence and took her to jail. After booking, the police took her to the Highlands Medical Center Emergency Department. (R. 291). Dr. Bridgers reviewed the attending nurse's recommendations and recommended a 24-hour admittance and a psychological consultation. (R. 294). An initial assessment by GrandView Behavioral Health Centers on October 6, 2011[2], indicated the claimant complained of "[being] irritable, crying all the time, difficulty making decisions, impulsive, feelings of loneliness and worthlessness, sad moods, difficulty with focus and concentration, history of suicide attempts (but no suicidal ideation now), insomnia, and racing thoughts." (R. 341). The assessment found that the claimant had normal orientation to time, place, and person; adequate insight; logical thoughts; precise speech; poor attention span; impaired memory; visual hallucinations; no delusions or suicidal/homicidal ideation; and no obsessions or compulsions. The attending physician also examined the claimant's back and made no notes about any complaints of back pain or limitations. Additionally, the physician found the claimant to have a full range of motion and her extremities to be non-tender. The physician diagnosed the claimant with depression and vague psychosis, and she recommended psychotherapy and psychopharmacology. (R. 345-47).

---

[2]The court cannot decipher the attending physician's signature or the medications prescribed on the report. However, at the ALJ Hearing, the claimant referenced seeing a Dr. Grant for her psychological complications; thus, the court surmises that the Dr. Grant referenced by the claimant is the doctor who conducted her evaluations on October 6 and January 14.

On January 14, 2012, the claimant made a follow-up visit to GrandView. The attending physician[3] examined the claimant and found her to be oriented to person, place, and time; to have fair insight, judgment, appetite, energy, and motivation; and to have intact memory, appropriate appearance, insomnia, and a logical thought process. (R. 340).

On September 28, 2012, Dr. Hood completed a Mental Capacity Assessment of the claimant. (R. 407). He diagnosed her with migraines and seizures and assessed her with moderate limitations in understanding and memory; marked limitations in her ability for sustained concentration and persistence; and marked limitations in social interaction. Additionally, he noted that the claimant had extreme limitations on her ability to "complete a normal workday [or work week] without interruption from psychologically based symptoms." Dr. Hood based his conclusions upon the claimant's suffering from seizures, migraines, difficulty in hearing, and a speech defect. (R. 406).

*ALJ Hearing*

At the hearing, the claimant alleged disabilities resulting from diabetes, high cholesterol, degenerative joint disease in the knees, leg and back pain, hypertension, shortness of breath, and insomnia. (R. 49-61). The claimant testified that she cannot walk for longer than five to ten minutes before her legs cramp, and that she cannot sit for longer than fifteen minutes at a time before having to stand. Additionally, the claimant testified that she would not be able to perform even a sedentary job that allowed her to move freely when needed because she "can't focus on nothing." She also claimed that her knees and ankles would become stiff because of fluid, and that

---

[3]Because of the illegible handwriting, the court cannot decipher the name of the attending physician; any new problems since the last visit; or what course of action the physician recommended.

she suffered from heavy bouts of depression. (R. 59-64). She further testified to smoking one and a half packs of cigarettes a day. (R. 85).

The claimant testified that Dr. Hood recommended that she apply for disability. She also noted that a nurse, "who wouldn't take the time to sit down with [her]," filled out the Residual Functional Capacity Questionnaires, rather than Dr. Hood, who merely signed the forms. (R. 75). When asked if she had received a second opinion on any of her medical conditions, she made no mention of seeing a second doctor for any of her numerous physical ailments. The claimant only mentioned that she saw Dr. Grant for her psychological conditions, but said that she stopped seeing him because she felt he was ineffective. (R. 83). She denied accepting any treatment for depression at the time of the hearing, attending group therapy, individual therapy, or even meeting with a social worker. (R. 68).

The vocational expert, John McKinney, testified about the ability of the claimant to work in any of her previous occupations. (R. 88). The ALJ posed a hypothetical to Mr. McKinney in which  the hypothetical claimant was of the same age, education, and work experience as the claimant. Additionally, the hypothetical claimant could frequently lift or carry up to ten pounds; could stand or walk in combination with normal breaks for six hours of an eight-hour workday; could frequently balance, stoop, kneel, crouch, and crawl; could perform simple, routine tasks requiring no more than short, simple instructions and simple work-related decision making with few workplace changes; and could have frequent interaction with co-workers and supervisors. The ALJ then asked whether the individual in the hypothetical scenario could perform any of the actual claimant's past work. Mr. McKinney responded that such an individual could not, because all of her previous jobs were light, moderate, or heavy and semi-skilled, and that a claimant with the limitations imposed by the hypothetical could only perform light, unskilled jobs. (R. 89).

11

Mr. McKinney also testified that a claimant limited by the conditions posed in the hypothetical could find jobs in the regional and national economy. Mr. McKinney testified that 500 assembler jobs (*DOT* 729.684-054) were available across the state and 24,000 nationally; 6,200 jobs as a hand packager (*DOT* 753.687-038) were available across the state, as well as 300,000 nationally; and 1,800 jobs as a production inspector (*DOT* 559.687-074) were available in the state and 90,000 nationally. (R. 89).

However, when the ALJ added the limitation that the hypothetical individual could stand or walk in combination with normal breaks for only two hours during an eight-hour workday and sit for up to eight hours, Mr. McKinney testified that the number of available jobs decreased. Because of the sedentary occupational base, Mr. Mckinney estimated that the positions available as hand packager, production inspector, and assembler would be more than cut in half. (R. 90). Mr. McKinney further testified that the hypothetical claimant could also work as a garment folder (*DOT* 789.687-066) or machine tender (*DOT* 690.685-078). Mr. Mckinney testified that 300 and 400, respectively, of those jobs were available in the state. When asked if the claimant could find a job given the limitations alleged on her Residual Functional Capacity Questionnaire, Mr. McKinney testified that she could not because of her need to take unscheduled breaks and propensity for excessive absenteeism. (R. 92).

## VI.  ALJ OPINION

On February 15, 2013, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 25). First, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of her disability. (R. 17). Next, the ALJ found the claimant's degenerative disc disease of the lumbar spine, obesity, type II diabetes mellitus, and Major Depressive Disorder without psychotic features qualified as severe impairments. He

concluded, however, that the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. 19).

Specifically, the ALJ found that the claimant's mental impairment did not satisfy the criteria of "paragraph B," which requires at least two of the following: marked restrictions of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Citing a Function Report completed by the claimant on April 5, 2012, the ALJ found only moderate restrictions in the activities of daily living, social functioning, and concentration, persistence, or pace. He noted that she got coffee in the morning and watched T.V. most of the day, but didn't really feel like doing anything; she got along well with authority figures and had never been laid off from a job because of difficulty getting along with others; but she did not have the ability to pay attention for long. The ALJ also ruled that the claimant had experienced no episodes of decompensation that had been of extended duration. Because the claimant's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the ALJ found that the "paragraph B" criteria were not satisfied. (R. 19-20).

The ALJ also found that the claimant did not meet "paragraph C" requirements because she was not dependent upon others for self-care; did not require a highly structured and supportive living arrangement; and drove, shopped, and performed other activities that indicated she did not meet the "paragraph C" criteria. (R. 20).

Next, the ALJ determined the claimant's Residual Functioning Capacity (RFC). She found that the claimant could perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: can frequently lift and/or carry up to ten pounds and occasionally lift and/or

carry up to twenty pounds; can stand and/or walk in combination, with normal breaks, for at least six hours during an eight-hour workday; can sit, with normal breaks, for up to eight hours during an eight-hour workday; can frequently climb ramps and stairs and should never climb ladders, ropes or scaffolds; can frequently balance, stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, and working in areas of vibration; should avoid all exposure to industrial hazards including working at unprotected heights and in close proximity to moving dangerous machinery; can perform simply, routine tasks requiring no more than short simple instructions and simple work-related decision making with few workplace changes; and can have frequent interaction with co-workers and supervisors and occasional interactions with members of the general public. (R. 20-21). The ALJ came to this decision after she examined the entire record and determined that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (R. 21).

To support her conclusion about the claimant's credibility, the ALJ referenced the MRI of the claimant's lumbar spine from August 28, 2009, and the ER records from Highland Medical Center from June 2011 to January 2012. She found the objective medical records did not indicate the claimant's pain was disabling because 1) the MRI indicated only minimal degenerative disc disease and showed no evidence of localized disc protrusion or extrusion; 2) the ER records showed the claimant's back was normal and the extremities were non-tender within normal range of motion; and 3) the record lacked complaints of knee pain and contained no diagnostic scans of the claimant's knees. (R. 21).

Additionally, the ALJ referenced the fact that, despite being diagnosed with Major Depressive Disorder and claiming problems with concentration and memory, the claimant failed to comply with suggested mental health treatment and had not engaged in any form of ongoing mental health treatment at the time of the hearing. She concluded that "the lack of ongoing mental health treatment suggests [the claimant's] symptoms are not as severe as she contends." (R. 22).

She also discounted the Residual Functional Capacity Form signed by Dr. Hood because the conclusions made by Dr. Hood were not "well supported by medically acceptable clinical and laboratory diagnostic techniques." Rather, the ALJ noted that Dr. Hood's conclusions merely repeated the patient's own subjective statements. Additionally, the ALJ found that the examination records of Drs. Reichie, Alapati, and Bridges did not indicate the claimant was disabled to the extent the claimant alleged and were inconsistent with Dr. Hood's finding. The ALJ concluded that "the objective medical evidence does not validate the asserted severity of the claimant's impairments and work related limitations" present in the Residual Functional Capacity Report. (R. 23).

The ALJ further discredited the claimant by noting that, although the claimant testified that seizures prevent her from working, "the record shows [the claimant] continues to drive and takes no medication for a seizure disorder." (R. 23). Finally, he questioned the credibility of the claimant's disability claim given the fact that she filed for, and received, unemployment insurance in Alabama after her alleged disability, noting that, to be eligible to receive benefits, the state law required her to affirm that she could engage in her past occupations.

After assessing the claimant's RFC, the ALJ found that the claimant was unable to perform past work because none of her past jobs were light and unskilled. The ALJ noted the claimant could work as an assembler, a hand packager, or a production inspector, and that based

on the VE's testimony, these jobs existed in significant numbers in the national economy. After considering the claimant's age, education, work experience, Residual Functioning Capacity, and the fact that work existed in significant numbers in the national and state economy, the ALJ determined that the claimant could make a successful adjustment to other work and was, therefore, not disabled. (R. 24).

## VII.   DISCUSSION

*Did the ALJ Properly Accord Less Weight to the Opinion of Dr. Hood, the Treating Physician?*

The claimant argues that the ALJ failed to properly articulate good cause for according less weight to the opinions of her treating physician, Dr. Hood. This court disagrees.

The ALJ must give the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004). The ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). The ALJ must state with particularity the weight given different medical opinions and the reasons for those weights, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). However, where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight and substantial evidence supports those reasons, the ALJ committed no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

The ALJ articulated specific reasons for failing to give the opinion of Dr. Hood controlling weight, and she supported those reasons with substantial evidence. The ALJ noted that Dr. Hood provided no objective clinical or laboratory findings to substantiate his opinion that the claimant suffered her impairments to the extent that the impairments were disabling. The ALJ also noted

that the only objective medical evidence of the claimant's back impairments showed only mild degenerative disc disease, and that examinations of the claimant by other physicians did not collaborate the extent and severity of the claimant's disability as detailed by Dr. Hood. She properly reasoned that Dr. Hood's opinions were conclusory and based upon the patient's own subjective testimony. Additionally, the ALJ noted that Dr. Hood's Residual Functioning Capacity Form alleged that the claimant suffers a disabling impairment resulting, in part, from seizures; however, the ALJ correctly noted that the claimant continued to drive and took no medication for her seizure disorder.

Because the ALJ applied the proper legal standard and provided substantial evidence for giving less weight to the Dr. Hood's opinion, she did not commit a reversible error.

### *Did the ALJ Properly Evaluate the Pain Standard?*

The claimant argues that the ALJ failed to properly assess the claimant's subjective testimony and articulate reasons for discrediting her testimony supported by substantial evidence. This court disagrees.

An ALJ evaluating pain and other subjective complaints must first consider whether the claimant demonstrated an underlying medical condition. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529. If the claimant demonstrated an underlying medical condition, the ALJ must then examine if any objective medical evidence confirms the severity of the alleged pain, or if the underlying medical condition had been objectively confirmed and is so severe that one could reasonably expect it to give rise to the alleged pain. *Id.* Subjective testimony can satisfy the pain standard if it is supported by medical evidence. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

17

If the ALJ discredits the claimant's subjective testimony, she must articulate her reasons. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The reasons articulated for discrediting the claimant's testimony may include the claimant's daily activities. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). However, if the ALJ does not articulate reasons, the court must accept the claimant's testimony as true. 921 F.2d at 1236.

In this case, the ALJ found the claimant demonstrated an underlying medical condition; however, she explicitly articulated her reasons for discrediting the claimant's alleged severity of pain. First, she noted that the MRI taken on August 28, 2009, showed only mild degenerative disc disease. She also noted that ER records containing examinations by doctors other than the claimant's primary care physician, Dr. Hood, did not indicate any impairments of the claimant's back or legs that rose to the level of disabling. Additionally, she noted that although the claimant complained of knee impairments, the claimant provided no objective or diagnostic medical evidence indicating the extent, severity, or existence of the alleged knee impairment. The ALJ properly reasoned that, "the lack of diagnostic testing suggests [complaints of knee pain] wasn't warranted and/or that the claimant did not complain of knee pain often." Finally, she noted that although the claimant alleged seizures that prevented her from working, the claimant continued to drive and took no medication for her seizure disorder.

The ALJ also clearly articulated her reasons for discrediting the claimant's testimony concerning the severity of mental impairments. The ALJ referenced the fact that, although the claimant alleged mental impairments due to her Major Depressive Disorder, she had not accepted any treatment for her disorder since January of 2012 and was not engaged in ongoing treatment of any form at the time of the hearing. The ALJ then reasoned that "the lack of ongoing mental health treatment suggests her symptoms are not as severe as she contends."

18

The ALJ further discredited the severity of the claimant's testimony by calling attention to the fact that the claimant collected unemployment for six months after claiming to be disabled, even though a requirement for collecting unemployment insurance in the state of Alabama is that the unemployed person be "physically and mentally able to perform work of character which he is qualified to perform by past experience or training, and he is available for such work...."

The ALJ provided copious reasons for rejecting the claimant's alleged severity of her pain, and the ALJ clearly articulated those reasons. Based on the explicit findings of the ALJ, this court concludes that she properly applied the Eleventh Circuit's pain standard and that substantial evidence supports her decision.

## VIII.  CONCLUSION

For the reasons as stated, this court concludes that the decision of the ALJ is supported by substantial evidence and is to be AFFIRMED. The court will enter a separate Order to that effect simultaneously.

DONE and ORDERED this day of 23rd day of September, 2014.


KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE